THE CITY OF CHICAGO, Plaintiff in Error, *vs.* THE WAL-DEN W. SHAW LIVERY COMPANY, Defendant in Error.

*Opinion filed April 19, 1913.*

1. MOTOR VEHICLES—*municipalities may regulate motor vehicles notwithstanding the act of 1911.* By the last proviso of section 12 of the Motor Vehicle act of 1911 the legislature has invested municipal corporations with power to make and enforce reasonable traffic and other regulations, except as to rates of speed, not inconsistent with the provisions of the act. (*Ayres* v. *City of Chicago,* 239 Ill. 237, and *People* v. *Sargent,* 254 id. 514, explained.)

2. ORDINANCES—*an ordinance is presumed to be valid.* Ordinances of a municipal corporation, to be valid, must be reasonable; but the presumptions are in favor of the validity of ordinances, and it is incumbent upon persons seeking to have them set aside as unreasonable, to point out or show affirmatively wherein the unreasonableness consists.

3. SAME—*Chicago ordinance against allowing smoke, gas or oil to escape from motor vehicle is not unreasonable on its face.* The Chicago ordinance prohibiting the use of any motor vehicles in such a manner as to permit the escape of any noxious smoke, gas, steam or other offensive odors, or so as to discharge any embers, oil or residue from the fuel used, is not in conflict with the Motor Vehicle act of 1911, nor is it, upon its face, unreasonable.

VICKERS, J., dissenting.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, and JAMES S. MCINERNEY, Prosecuting Attorney, (EDWIN J. RABER, LEON HORNSTEIN, and J. HENRY KRAFT, of counsel,) for plaintiff in error.

D'ANCONA & PFLAUM, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiff in error, the city of Chicago, brought an action in the municipal court of Chicago against the defendant in error, the Walden W. Shaw Livery Company, to recover

a penalty, not exceeding $25, for the violation of section 2728*b* of the Chicago code of 1911, it being alleged in the statement of claim filed in the municipal court by the city that the defendant in error did unlawfully operate, and permit to be operated, upon the streets, alleys and public places of the city, a motor vehicle, and permitted to escape therefrom noxious smoke, gas, steam or other offensive odors, in violation of said section of the code. The court, upon motion of defendant in error, quashed the summons and dismissed the suit on the ground that said ordinance was unreasonable and void, and that the State, by the Motor Vehicle act of June 10, 1911, (Laws of 1911, p. 487,) resumed control of the use and operation of automobiles and of the subject matter embraced in said ordinance. The city of Chicago having obtained from the trial judge the certificate required by statute therefor, has by writ of error brought the record directly to this court for review.

The ordinance upon which the action was based is as follows: "It shall be unlawful for any person to operate, or for any owner of any motor vehicle or motorcycle to permit to be operated, upon the streets, alleys and public places of this city, any motor vehicle or motorcycle so as to permit to escape therefrom any noxious smoke, gas, steam or other offensive odors, or so as to discharge any embers, oil or residue from the fuel used in the operation thereof. It shall be unlawful for any person to operate, or for any owner thereof to permit to be operated, upon the public streets, alleys and public places of this city, any motor vehicle or motorcycle the exhaust pipe of which, used for carrying exhaust gases from such vehicle or motorcycle, are not parallel to the ground."

It is contended by defendant in error that the intent and purpose of the legislature in passing the Motor Vehicle act of 1911 was to withdraw from municipalities the power to make any regulation whatever of the use and operation of motor vehicles, and that said act must be regarded as

supplying the sole method of regulating the use and operation of motor vehicles within the State. It is not denied that prior to the enactment of this statute plaintiff in error, as one of the municipalities of the State, possessed the power to legislate upon the subject covered by the ordinance in question, but it is insisted that the Motor Vehicle act of 1911 withdrew that power and by implication repealed the grant theretofore given municipalities to legislate upon this subject.

The Motor Vehicle act of 1911 contains twenty-one sections. Section 12 is relied upon as the one which divests municipalities of the power to make such regulation as is attempted by this ordinance. The other sections of the act deal with such questions as the registration by owners of motor vehicles; the placing upon the vehicle of the number plate provided by the Secretary of State; the equipment of the vehicle with lamps, brakes, horns, and the like; the registration by manufacturers; the prohibition against putting a fictitious number upon any vehicle; registration in case of sale; speed; licenses and badges of chauffeurs; the use of motor vehicles without the owners' consent; certain laws of the road, and the like. Section 12 of the act is as follows:

"No owner of a motor vehicle, except motor trucks and motor-driven commercial vehicles, or motor bicycle, who shall have obtained a certificate from the Secretary of State and paid the registration fees as hereinbefore provided, shall be required to pay any tax for vehicles carrying loads or any other tax upon the use of any such motor vehicle or motor bicycle in excess of the sum of $10 per annum for motor vehicles of thirty-five horse power or less used for the transportation of persons or more than twenty dollars ($20) per annum for motor vehicles of more than thirty-five (35) horse power used for the transportation of persons, from and after May 1, 1912, or to obtain any other license or permit to use or operate the same, nor shall such

owner be required to display upon his motor vehicle or motor bicycle any other number than the number of the registration seal, issued by the Secretary of State, or excluded or prohibited from or limited in the free use of his said motor vehicle or motor bicycle, nor limited as to speed upon any public street, avenue, road, turnpike, driveway, parkway, or any other public place, at any time when the same is or may hereafter be opened to the use of persons having or using other vehicles, nor be required to comply with other provisions or conditions as to the use of said motor vehicles or motor bicycles except as in this act provided: *Provided, however,* that nothing in this section contained shall be construed to apply to, or include, any speedway created, provided for, or maintained by the local authorities of any city, village, town or other municipal corporation within the State: *And, provided, further;* that the local authorities having jurisdiction over the public parks shall not by the terms of this act be prohibited from adopting and enforcing such reasonable ordinances, rules or regulations concerning the speed at which motor vehicles or motor bicycles may be operated within any such parks, provided the rate of speed of motor vehicles or motor bicycles by such ordinances, rules or regulations shall not be lower than the rate fixed for other vehicles and provided such authorities shall, by signs conspicuously placed, indicate the rate of speed permitted by such ordinances, rules or regulations: *And, provided, further,* that motor vehicles or motor bicycles may be excluded from any cemetery or grounds used for the burial of the dead, by the authorities having jurisdiction over the same. Except as in this section provided, no city, town or village, or other municipality shall have power to make any ordinance, by-laws or resolution limiting or restricting the use or speed of motor vehicles or motor bicycles, and no ordinance, by-law or resolution heretofore or hereafter made by any city, village or town, or other municipal corporation within the State,

by whatever name known or designated, in respect to or limiting the use or speed of motor vehicles or motor bicycles shall have any force, effect or validity, and they are hereby declared to be of no validity or effect: *Provided,* that nothing in this act contained shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor-driven commercial vehicles and motor vehicles which are used within their limits for public hire, or from making and enforcing reasonable traffic and other regulations except as to rates of speed not inconsistent with the provisions hereof."

Whether this section is as broad in its meaning as is contended for by defendant in error depends largely upon the meaning of the word "use" as it is there employed. Defendant in error treats this word as though it were employed in its broadest sense, and its contention is, in substance, that the statute, by depriving the municipalities of the State of the power to make any ordinance, by-laws or resolution limiting or restricting the use or speed of motor vehicles or motor bicycles, withdrew from the municipalities the power to make any regulations, except traffic regulations, with reference to motor vehicles while being driven over the streets. A careful inspection of this section will disclose that the word "use" is not employed in so broad a sense, but is limited to mean the mere driving of the machine over and along the streets of municipalities, and does not include the means furnished or the method adopted for the operation of the machine while being so driven. The section first provides that, with certain exceptions, no owner of a motor vehicle who has paid the registration fees and obtained a certificate from the Secretary of State shall be required to pay any tax upon the use of such motor vehicle in excess of a certain sum, the amount being graded to correspond with the horse power, and shall not be required to obtain any other license or permit to use or operate the

same or be required to display any other number than that issued by the Secretary of State; that he shall not be excluded or prohibited from or limited in the "free use" of his motor vehicle, nor limited as to speed upon any street or highway at any time when the same is open to the use of persons using other vehicles, and that he shall not be required to comply with other provisions or conditions as to the use of said motor vehicle except as provided in the act. The first proviso is, that nothing contained in the section shall be construed to apply to any speedway maintained by the local authorities of any municipality. The second proviso gives permission to authorities having jurisdiction over public parks to adopt and enforce reasonable speed regulations, provided the rate of speed fixed shall not be lower than the rate fixed for other vehicles. The third proviso is that motor vehicles may ·be excluded from any cemetery. Then follows the provision upon which defendant in error relies, that "except as in this section provided, no city, town or village, or other municipality shall have power to make any ordinance, by-laws or resolution limiting or restricting the use or speed of motor vehicles or motor bicycles, and no ordinance, by-law or resolution heretofore or hereafter made by any city, village or town, or other municipal corporation within the State, by whatever name known or designated, in respect to or limiting the use or speed of motor vehicles or motor bicycles shall have any force, effect or validity, and they are hereby declared to be of no validity or effect."

It will be observed that throughout this section, up to that portion just quoted, the use of motor vehicles referred to is that general use or employment which means the mere running of the machine for the general purposes for which it was intended,—the use which permits the driver of the machine to go whenever and wherever he wishes. The evident intent of this section is, that, having paid the registration fee required, the owner of a motor vehicle should not

be deprived of the free use of any street or public highway or the right to pass freely over the same at such rate of speed as has been fixed by the legislature, the only restrictions of such use permitted being those contained in the several provisos. That this must be the correct construction is evident from the last proviso of the section, which expressly confers the right upon municipalities to make and enforce reasonable traffic *and other regulations,* except as to rates of speed, not inconsistent with the provisions of the act. If the word "use" is employed in this act in the broad sense the defendant in error contends for, then the authority to make and enforce such "other regulations," contained in this proviso, would be in hopeless conflict with the remainder of the section.

Defendant in error cites *Ayres* v. *City of Chicago,* 239 Ill. 237, and *People* v. *Sargent,* 254 id. 514, as sustaining its theory that the legislature has withdrawn all power from municipalities to pass any ordinance attempting to regulate the operation of motor vehicles, and quotes from those cases. The *Ayres case* was decided in 1909, and the Motor Vehicle act of 1907 (Laws of 1907, p. 510,) was therein considered. That act, in its general scope and intent, was quite similar to the act of 1911. The present law was enacted since the *Ayres case* was decided, and the legislature had before it the opinion of the court in the *Ayres case* at the time it was passed. Section 12 of the act of 1911 deals with the same subject matter as section 13 of the act of 1907 and is practically the same in its scope and intent, except that by the act of 1911 the following language is added to the last proviso of said section 12: "or from making and enforcing reasonable traffic and other regulations except as to rates of speed not inconsistent with the provisions hereof." That provision was nowhere contained in the act of 1907, and the intent and purpose of the legislature in incorporating it into the act of 1911 was undoubtedly to meet the statement in the *Ayres case* that it was

clearly the purpose of the legislature to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles. By the addition of the language last quoted to the act of 1911 the legislature has invested municipalities with the power and authority to make any regulation of the use of motor vehicles not inconsistent with the provisions of the act, except as to rates of speed.

The *Sargent case* was decided under the act of 1911. The only question there presented was whether the act was constitutional, and a decision of that question did not involve the question of the power of municipalities to make and enforce such reasonable regulations relating to motor vehicles as are not inconsistent with the regulations contained in said act. The effect of the provision added to the last proviso of said section 12 above quoted was neither presented nor considered, nor was a consideration thereof necessary to a decision of the question there presented. The statements appearing in the *Sargent case,* after quoting from the opinion in the *Ayres case,* that "the legislative intent is the same as expressed above in respect to the act of 1907," and that "the manifest purpose of the legislature was to bring the whole subject of regulating the use of motor vehicles under the control of the State," while not affecting the decision in that case, would, if followed without qualification in a case such as the one at bar, nullify the said provision added to the last proviso of said section 12. In order to give effect to the plain provisions of the act of 1911, those statements must be qualified so as not to embrace the power of municipalities to make and enforce reasonable traffic and other regulations, except as to rates of speed, not inconsistent with the provisions of the act.

It is true that the powers of municipalities are all delegated, and the legislature may at any time either modify such delegated powers or entirely withdraw them, but by the Motor Vehicle act of 1911 the legislature did not intend

to deprive municipalities of the power to legislate upon the subject matter covered by the ordinance in question. The ordinance is not invalid as being in conflict with that act.

The defendant in error has not discussed the question whether the ordinance is unreasonable and has advanced no reason why the action of the court should be sustained on this ground. Whether any particular ordinance is reasonable for the purposes for which it is enacted is in the first instance a question to be determined by the municipal authorities. When they have acted and the ordinance has been passed it is presumptively valid, and before a court would be justified in holding it invalid its unreasonableness must be clearly made to appear. While it is true that municipal ordinances, to be valid, must be reasonable, the presumption is in favor of their validity, and it is incumbent upon anyone seeking to have them set aside as unreasonable, to point out or show affirmatively wherein the unreasonableness consists. (*Chicago and Alton Railway Co.* v. *Averill,* 224 Ill. 516; *People* v. *Grand Trunk Western Railway Co.* 232 id. 292.) There is nothing on the face of this ordinance which clearly shows it to be unreasonable. To determine whether it is unreasonable would require proof *aliunde* the ordinance. The action of the court in quashing the summons cannot, therefore, be sustained upon that ground.

The judgment of the municipal court is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE VICKERS, dissenting.