THE CITY OF CHICAGO, Defendant in Error, vs. CHARLES R. FRANCIS, Plaintiff in Error.

*Opinion filed February 21, 1914—Rehearing denied April 10, 1914.*

1. MOTOR VEHICLES—*city cannot make regulations inconsistent with the Motor Vehicle act.* Under the present Motor Vehicle act a city may make and enforce reasonable traffic and other regulations except as to rates of speed, provided such regulations are not inconsistent with the Motor Vehicle act and the conditions are such as to warrant them.

2. SAME—*city cannot require owner of pleasure car to display city license number.* A city cannot compel the owner of a motor vehicle, not a motor truck or motor-driven commercial vehicle, to display upon such vehicle any number other than the number of the registration seal issued by the Secretary of State, and hence an ordinance requiring the owner of a motor vehicle, not a motor truck or motor-driven commercial vehicle, to display the number corresponding with the city license is in conflict with the Motor Vehicle act and is void.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

BITHER, GOFF & FRANCIS, for plaintiff in error.

WILLIAM H. SEXTON, Corporation Counsel, and JAMES S. McINERNEY, Prosecuting Attorney, (U. S. SCHWARTZ, of counsel,) for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error was convicted in the municipal court of Chicago of a violation of section 2720 of the Chicago code of 1911 for operating a motor vehicle on the streets of Chicago. It was stipulated in the record that such motor vehicle was owned by him and was for his own personal use. The section under which he was found guilty is a part of the vehicle license ordinance, and is as follows:

"Sec. 2720. Upon the issuance of said license the city clerk shall deliver to the applicant a metal plate bearing a number and the name of the class to which such wagon or

vehicle belongs and the year for which such license is issued, and it shall be the duty of such applicant to affix such plate in a conspicuous place upon the front or the right side of such wagon or vehicle or upon the right side of the horse drawing any such wagon or vehicle, or if such vehicle be a motor bicycle or tricycle, upon the rear mud-guard thereof, where it can readily be seen; and it shall be unlawful for any person, firm or corporation to use, or to cause or permit any agent or employee to use, any such wagon or vehicle, although duly licensed, upon the streets, avenues or alleys of the city unless such plate is affixed as above provided: *Provided,* that it shall not be necessary for any wagon or vehicle to have the aforesaid metal plate affixed as aforesaid except when actually in use upon the streets, avenues or alleys of the city."

Plaintiff in error contends that this ordinance is invalid because it is prohibited by the Motor Vehicle law of June 10, 1911, (Hurd's Stat. 1911, p. 2041,) and because it is not within the powers granted to the city of Chicago.

The portion of the act which plaintiff in error contends prohibits the ordinance in question is found in section 12, (Hurd's Stat. 1911, p. 2045,) which is as follows:

"Sec. 12. *Local ordinances prohibited.*—No owner of a motor vehicle, except motor trucks and motor-driven commercial vehicles, or motor bicycles who shall have obtained a certificate from the Secretary of State and paid the registration fees as hereinafter provided, shall be required to pay any tax for vehicles carrying loads or any other tax upon the use of any such motor vehicle or motor bicycle in excess of the sum of $10 per annum for motor vehicles of thirty-five horse power or less used for the transportation of persons or more than twenty ($20) dollars per annum for motor vehicles of more than thirty-five (35) horse power used for the transportation of persons, from and after May 1, 1912, or to obtain any other license or permit to use or operate the same, nor shall such owner be

required to display upon his motor vehicle or motor bicycle any other number than the number of the registration seal, issued by the Secretary of State, or excluded or prohibited from or limited in the free use of his said motor vehicle or motor bicycle, nor limited as to speed upon any public street, avenue, road, turnpike, driveway, parkway, or any other public place, at any time when the same is or may hereafter be opened to the use of persons having or using other vehicles, nor be required to comply with other provisions or conditions as to the use of said motor vehicles or motor bicycles except as in this act provided: *Provided, however,* that nothing in this section contained shall be construed to apply to, or include, any speedway created, provided for, or maintained by the local authorities of any city, village, town or other municipal corporation within the State: *And provided, further,* that the local authorities having jurisdiction over the public parks shall not by the terms of this act be prohibited from adopting and enforcing such reasonable ordinances, rules or regulations concerning the speed at which motor vehicles or motor bicycles may be operated within any such parks, provided the rate of speed of motor vehicles or motor bicycles fixed by such ordinances, rules or regulations shall not be lower than the rate fixed for other vehicles and provided such authorities shall, by signs conspicuously placed, indicate the rate of speed permitted by such ordinances, rules or regulations: *And, provided, further,* that motor vehicles or motor bicycles may be excluded from any cemetery or grounds used for the burial of the dead, by the authorities having jurisdiction over the same. Except as in this section provided, no city, town or village, or other municipality shall have power to make any ordinance, by-laws or resolution limiting or restricting the use or speed of motor vehicles or motor bicycles, and no ordinance, by-law or resolution heretofore or hereafter made by any city, village or town, or other municipal corporation within the State,

by whatever name known or designated, in respect to or limiting the use or speed of motor vehicles or motor bicycles shall have any force, effect or validity, and they are hereby declared to be of no validity or effect: *Provided,* that nothing in this act contained shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor-driven commercial vehicles and motor vehicles which are used within their limits for public hire, or from making and enforcing reasonable traffic and other regulations except as to rates of speed not inconsistent with the provisions hereof."

In 1907 the General Assembly amended clause 96 of section 1, article 5, of the City and Village act, thereby authorizing the imposition of license fees on wagons or other vehicles conveying loads upon the streets of cities, etc. The Chicago city council passed an ordinance imposing such licenses. The statute and the ordinance were held to be constitutional and valid in the case of *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58. In the case of *Ayres* v. *City of Chicago,* 239 Ill. 237, the ordinance in question was again before this court, and it was held that the word "license," as used in the ordinance, means a tax, and the issuing of such license is merely giving a receipt for the tax. It was further held in that case that the Motor Vehicle law of 1907 was a regulatory measure referable to the police power of the State, and its effect was to abrogate all municipal ordinances designed to regulate the use of motor vehicles passed prior to the time the act went into force and to deprive municipalities of the power to pass such ordinances in the future. That case also held that the ordinance imposing a license or tax on motor vehicles was valid, as a proper exercise of the taxing power of the city of Chicago, for the reason that under the Motor Vehicle law of 1907 the owner of a motor vehicle was required to pay to the Secretary of State the sum of two

dollars, only, for purposes of registration, and that amount was merely nominal and could not be regarded in any sense as a tax.

In 1911 the General Assembly amended the Motor Vehicle law, and section 12 above set out was contained in that law. This law was held to be constitutional by this court in the case of *People* v. *Sargent*, 254 Ill. 514.

The Chicago ordinance was again before this court in the case of *City of Chicago* v. *Shaw Livery Co.* 258 Ill. 409, and this court held that section 12 of the Motor Vehicle law did not prohibit a municipal corporation from making and enforcing reasonable traffic and other regulations, except as to the rate of speed, not inconsistent with the Motor Vehicle law passed by the General Assembly, and that an ordinance of Chicago against allowing smoke, gas or oil to escape from a motor vehicle was not unreasonable on its face. The court further held that in the provision in section 12 that cities should have no power to pass any ordinance limiting or restricting the speed or *use* of motor vehicles, the word use was not to be taken in its broadest sense, but referred to the "general use or employment, which means the mere running of the machine; the use which permits the driver of the machine to go whenever and wherever he wishes;" and that under the last proviso to section 12, municipalities had the power to make any regulation as to the use of motor vehicles *not inconsistent with the provisions of the act,* except as to rate of speed.

We have cited the foregoing authorities as showing the history of the litigation in recent years on this subject with a view to ascertain, if possible, the intent and scope of the State law now in force. The question in this case is whether the city of Chicago can compel, by ordinance, the owner of a motor vehicle, other than a motor truck or motor-driven commercial vehicle, to display thereon any other number than the number of the registration seal issued by the Secretary of State. The present statute expressly

provides, "nor shall such owner be required to display upon his motor vehicle or motor bicycle *any other number* than the number of the registration seal issued by the Secretary of State." The ordinance in question makes it unlawful for any person to use *any* vehicle upon the streets of the city of Chicago unless a metal plate is affixed *bearing a number* issued by the city clerk of the city of Chicago. The ordinance is squarely in conflict with the State law, and must therefore be held invalid and void unless within some of the provisos. It is apparent from this law that the General Assembly by the revision of the law in 1911, and having in mind the court decisions of recent years which we have cited, intended to take certain matters in regard to the control of motor vehicles entirely out of the hands of municipal authorities. As said in *Ayres* v. *City of Chicago, supra:* "It is a fact within the common knowledge of most persons that automobiles, other than those used in particular localities for hire, are extensively used in this State in making tours of considerable distance, in the course of which many cities, villages and towns would be visited. * * * Clearly, the purpose of the legislature was to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles." This condition is becoming more apparent each year with the extended use of motor vehicles and the long distances traveled by them in short periods of time, hence the urgent need of a general law which would apply to the whole State, so that laws concerning motor vehicles being propelled about the State should not be left to the ordinances of each individual village or city in the State. The latter course would lead to confusion and in some cases to injustice. Almost any owner of a motor vehicle or motorcycle will frequently pass through several cities or villages in the course of a few hours. If the city of Chicago can compel the owner of an automobile to affix the tag of that

municipality, every other city and village in the State can by ordinance do likewise. The legislature evidently had this in mind, as well as other matters which would lead to confusion unless corrected, when the law of 1911 was passed. The exception, from the law, of motor trucks and motor-driven commercial vehicles, which would necessarily be used locally, emphasizes the intent of the law in regard to motor vehicles like the one used by plaintiff in error in this case. It is undoubtedly necessary for municipalities to establish and enforce traffic regulations, and the reasonableness of municipal ordinances enforcing such regulations would depend upon the circumstances and conditions in such municipalities. Under the law a municipality may make and enforce reasonable traffic and *other* regulations, except as to rate of speed, *not inconsistent with* the provisions of the State law regulating the use of motor vehicles when conditions warrant them.

It is urged by counsel for defendant in error that the ordinance in question merely required a number on the machine; that the number is but a token,—an indication of something else which has been done; that the ordinance is designed to enable the enforcement of a revenue measure, and without it that revenue measure is rendered practically incapable of enforcement. It may be, judging from the language of section 2720, that the metal plate bearing a number is evidence of a receipt for a tax or license imposed under some other ordinance or section of an ordinance. If there is such an ordinance we are not advised of its terms and are not passing on the validity of such ordinance. We cannot pass on an ordinance that is not in the record and is not before the court.

Our conclusion is that section 2720 of the ordinance of the city of Chicago, under which plaintiff in error was convicted, is contrary and repugnant to section 12 of the Motor Vehicle law of 1911-and is therefore invalid and void.

For the reasons given the judgment will be reversed.

*Judgment reversed.*