THE CITY OF LINCOLN, Appellant, *vs.* JOSEPH P. DEHNER, Appellee.

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

MOTOR VEHICLES—*a city cannot require license fee for the use of an automobile not a truck or commercial vehicle.* An ordinance requiring the owner of an automobile, not a truck or commercial vehicle, to pay an annual license fee for such automobile is in direct conflict with section 12 of the Motor Vehicle act of 1911 and is invalid. (*City of Chicago* v. *Francis,* 262 Ill. 331, followed.)

APPEAL from the Circuit Court of Logan county; the Hon. GEORGE W. PATTON, Judge, presiding.

URI KISSINGER, City Attorney, (JOHN W. BECKWITH, of counsel,) for appellant.

KING & MILLER, and BEACH & TRAPP, (LOUIS J. PIERSON, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This case was begun before a justice of the peace by the city of Lincoln, appellant in this court, against Joseph P. Dehner, appellee, to recover the penalty for the violation by the appellee of an ordinance of said city known as the Wheel Tax ordinance. The justice, upon hearing the case, found the issues for appellant and against appellee, and assessed a fine of $25 and costs of suit. Appellee perfected an appeal to the circuit court of Logan county. On a trial *de novo* in that court a jury was waived by the parties to the suit and the case was heard by the court. Appellant offered the ordinance in question in evidence, and appellee objected to its introduction on the ground, among others, that it was illegal and in contravention of the laws of Illinois in so far as it purports to apply to motor vehicles like that used by appellee and provides for the payment of a license for the use of the same. The court admitted the ordinance subject to the objections, and after hearing the case found, as a matter of law, that the ordinance offered in evidence was invalid as against the appellee and sustained the objections to its legality, and further found the issues against the appellant and in favor of the appellee and discharged the appellee and entered judgment accordingly. Appellant appealed from said judgment, and the validity of a municipal ordinance being involved and the trial judge having certified that in his opinion the public interest required the cause to be heard by this court, the appeal has been taken to this court.

Appellant has assigned as error the action of the trial court in discharging appellee; in holding said ordinance illegal and invalid as to the appellee; in holding, as a matter of law, that the ordinance, as against the appellee, is in contravention of and prohibited by section 12 of the Motor Vehicle law, approved June 10, 1911, and in force July 1, 1911; and in refusing to admit the ordinance in evidence.

Section 1 of the ordinance provides that it shall be unlawful for any person to use any wagon or other vehicle in the transportation of persons or property upon the streets of said city unless such wagon or vehicle be licensed as provided in the ordinance. Section 2 provides for the filing of an application with the city authorities by any person desiring such license, the payment of the license fee provided in the ordinance to the city treasurer, and the issuance of such license. Section 3 fixes the license fees for the various kinds of vehicles, and provides that the annual license fee for automobiles and motor vehicles of more than 35-horse power, such as was used by appellee, used for the transportation of persons, exclusive of motor trucks and motor vehicles used for commercial purposes, shall be $8. Section 4 provides that the holder of such license shall affix a metal plate bearing a number to the vehicle used by him, but provides, however, "that it shall not be required for the owner of a motor vehicle or motor bicycle to have the metal plate bearing a number provided in this section attached to his motor vehicle or motor bicycle." Section 5 provides penalties for the violation of the ordinance.

The evidence in the case shows that appellee used his automobile upon the public streets and thoroughfares of the city of Lincoln on different days subsequent to the passage of the ordinance, and after May 1, 1914, and prior to the date of the beginning of this suit, and did not pay to the city of Lincoln the license fee for the license year beginning May 1, 1914. The evidence also shows that appellee had obtained a certificate from the Secretary of State and paid the registration fee for the year 1914 provided and required by the Motor Vehicle law of this State, approved June 10, 1911, and in force July 1, 1911; (Laws of 1911, p. 487;) that the automobile so owned and used by the appellee upon the public streets is an automobile of more than 35-horse power, and is used for the transportation of persons but not for commercial purposes or for

268 — 12

hire. The city of Lincoln is incorporated under the general law of this State for the incorporation of cities and villages and its population is about 11,000. Appellee introduced oral evidence tending to show that persons, non-residents of the city of Lincoln, during the year beginning May 1, 1914, used vehicles drawn by horses, also motor vehicles carrying passengers and loads, upon the public streets of said city, coming into, going out of and passing through said city for business and pleasure.

The ordinance in question is squarely in conflict with section 12 of the Motor Vehicle law, which prohibits local ordinances regulating the use of motor vehicles like the one owned and used by the appellee in this case, and provides that no owner of a motor vehicle, except motor trucks and motor-driven commercial vehicles, who shall have obtained a certificate from the Secretary of State and paid the registration fee as provided in section 2 of the said act, shall be required to pay any tax for vehicles carrying loads, or any other tax upon the use of any such motor vehicle, in excess of the sum of $20 per annum for motor vehicles of more than 35-horse power, or to obtain any other license or permit to use or operate the same; nor shall such owner be required to display upon his motor vehicle any other number than the number of the registration seal issued by the Secretary of State, nor prohibited from or limited in the free use of his said motor vehicle, nor limited as to speed upon any public street, avenue, road or any other public place at any time when the same is opened to the use of persons using other vehicles, nor be required to comply with any other conditions as to the use of said motor vehicle except as provided in the act.

Appellant, however, relies upon the case of *Ayres* v. *City of Chicago*, 239 Ill. 237, in which it was held that the Chicago wheel tax ordinance, (which was set out in the opinion of this court in *Harder's Storage Co.* v. *City of Chicago*, 235 Ill. 58, and which is similar to the ordinance

in the case at bar,) was not in conflict with section 13 of the Motor Vehicle law of 1907, which provided, as does section 12 of the act of 1911 above referred to, that no owner of a motor vehicle who shall have obtained a certificate from the Secretary of State, as provided in the law of 1907, shall be required to obtain any other license or permit to use or operate the, same. The reason for the holding in the *Ayres case,* as is clearly pointed out in the opinion, was that the word "license," as used in the Chicago ordinance, means tax, and the issuance of such license is merely giving a receipt for the tax, and that the only license fee required under the law of 1907 to be paid to the Secretary of State was the sum of $2 for all classes of vehicles, which sum was merely nominal and barely sufficient to cover the expenses of carrying out the provisions of the law as to furnishing numbers, plates, etc., by the Secretary of State and could not be regarded in any sense as a tax. It was, however, clearly pointed out in the opinion in that case that the intent and effect of the Motor Vehicle law of 1907 were to abrogate all municipal ordinances designed to regulate the use of motor vehicles, passed prior to the time the act went into force, and to deprive municipalities of the power to pass such ordinances in the future. As was stated in the opinion: "It is a fact within the common knowledge of most persons that automobiles, other than those used in particular localities for hire, are extensively used in this State in making tours of considerable distance, in the course of which many cities, villages and towns would be visited. * * * Clearly, the purpose of the legislature was to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles." We held in that case that by the law of 1907 the legislature had taken the subject of the regulation of speed and operation of automobiles out of the hands of local authorities and passed the Motor Vehicle law as a

general, uniform regulation, applicable alike to all the municipalities of the State.

In the case of *People* v. *Sargent,* 254 Ill. 514, the constitutionality of the Motor Vehicle law of 1911 was before the court, and in the opinion in that case, written by the same eminent jurist who wrote the opinion in the *Ayres case,*—the late Judge Vickers,—the above extracts from the opinion in the *Ayres case* were set out, and in addition it was there said: "A careful reading of the act of 1911 will show that the legislative intent is the same as expressed above in respect to the act of 1907. The manifest purpose of the legislature was to bring the whole subject of regulating the use of motor vehicles under the control of the State."

In the case of *City of Chicago* v. *Shaw Livery Co.* 258 Ill. 409, it was held that under a proviso of section 12 of the law of 1911, by which municipalities had the right to make and enforce reasonable traffic and other regulations, except as to rates of speed, not inconsistent with the provisions of the act, an ordinance of the city of Chicago prohibiting the use of any motor vehicle in such a manner as to permit the escape of any noxious smoke, gas, steam or other offensive odors, or so as to discharge any embers, oil or residue from the fuel used, was not in conflict with the Motor Vehicle act of 1911.

By section 2 of the law of 1911 the legislature materially increased the registration fees of motor vehicles, such fees depending upon the horse power of the vehicles, so that the sole reason given in the *Ayres case* for holding the Chicago wheel tax ordinance not in conflict with the law of 1907 no longer exists. The registration fees now charged by the State under the law of 1911, such as were paid by appellee in the case at bar, are no longer nominal but are a substantial amount, and are, in effect, a tax for revenue purposes. The registration fees for motor vehicles fixed by section 2 of the act of 1911 vary from $4 for

automobiles of 25-horse power and less, up to $10 for automobiles of more than 50-horse power. The automobile owned by appellee was of 35-horse power or more, and he was required to pay, and did pay, to the Secretary of State, as required by said section 2, the sum of $8 per annum. By section 19 of the act it is provided that the proceeds of such registration fees shall be deposited in the State treasury and set apart as a special fund, known as the road fund, to be used for the permanent improvement of highways.

It might be contended that there is no limitation on the power of municipalities to tax motor vehicles or their use, provided they keep within the limits fixed by section 12, which in the present case would be $20 per annum for a car of 35-horse power or more, which was the horse power of the car used by appellee. The word "tax" does not occur anywhere in the ordinance in question. The fees required to be paid are license fees. Conceding, however, for the sake of argument, that these fees are a tax,—and such was the holding in *Ayres* v. *City of Chicago, supra,*—the ordinance requires every person driving an automobile upon the streets of appellant to procure a license. If the city of Lincoln can pass a valid ordinance of this kind any other municipality in the State can pass and enforce a similar ordinance. As was pointed out in the cases of *Ayres* v. *City of Chicago* and *People* v. *Sargent, supra,* automobiles are extensively used in making tours of considerable distance, in the course of which many cities, villages and towns would be visited. Such, in fact, is the ordinary, reasonable and practical use made of motor vehicles such as that owned and used by appellee. It was shown by the evidence that large numbers of such motor vehicles from various parts of the State were used daily on the streets of appellant during the season for motoring, and this is true of many, perhaps all, other cities in the State. If the owner or driver of a motor car such as that owned by appellee could be held up and made to pay a license fee or

tax by the authorities of every city, town and village he visited or passed through, it would be impossible for anyone to use or operate a motor car for the purposes for which it was purchased or intended and ordinarily used. In any event, such ordinances, under present conditions, as shown by the evidence, would be so unreasonable that they would prohibit the natural and practical use of automobiles. Whatever the legislature intended or meant, it was never intended to permit such a condition of affairs. If we are to adhere to the construction of the law of 1907 as announced in the case of *Ayres* v. *City of Chicago, supra,* and the construction of the law of 1911 as held in *People* v. *Sargent, supra,* that it was the intent of the legislature to abrogate all local ordinances regulating the use of automobiles and to deprive municipalities of the power of passing such ordinances in the future, and as further announced in *City of Chicago* v. *Shaw Livery Co. supra,* except in so far as the proviso to section 12 applies, then we must hold that a local ordinance of a municipality requiring the owners of motor vehicles like that used by appellee to pay for and obtain a license from the municipal authorities as a prerequisite to its use on the streets of such municipality is invalid. The same reasons for holding that the State law supersedes all ordinances regulating the use of automobiles as to speed, etc., would equally apply to all ordinances requiring licenses as a prerequisite to such use. The ordinance in question directly operated to limit the free use of the motor vehicle so owned by appellee and is against both the spirit and letter of the law. In section 12 of the law of 1911 it is expressly provided that no owner of a motor vehicle, except motor trucks and motor-driven commercial vehicles, or motor bicycles, shall be required to obtain any license or permit to use or operate the same other than the certificate from the Secretary of State. In the late case of *City of Chicago* v. *Francis,* 262 Ill. 331, we held that a city ordinance requiring the owner of a motor vehicle,

not a motor truck or motor-driven commercial vehicle, to display a number corresponding with a city license is in conflict with section 12 of the Motor Vehicle law of 1911 and is therefore void. What was said in that case applies to the case at bar.

The ordinance in question is void as to appellee and the circuit court of Logan county was right in so holding, and the judgment of that court will be affirmed.

*Judgment affirmed.*