### Glen B. Pettit, Plaintiff in Error, v. Weil-McLain Company, Defendant in Error.

### Gen. No. 32,931.

Opinion filed April 17, 1929.

John A. Bloomingston, for plaintiff in error.

John Clark Baker, for defendant in error.

Mr. Justice Wilson delivered the opinion of the court.

This was an action in tort brought by the plaintiff, Glen B. Pettit, against the defendant Weil-McLain Company, a corporation, to recover damages by reason of a collision occurring on Ashland avenue, at or near its intersection with 52nd street, two intersecting streets in the City of Chicago. A trial was had with a jury, resulting in a verdict in favor of the defendant, upon which verdict judgment was entered and an appeal taken to this court.

But two points are urged for reversal: first, that the trial court erred in admitting in evidence on behalf of the defendant, a certain ordinance of the City of Chicago, known as section 3822; second, that the court erred in giving certain instructions on behalf of the defendant.

The ordinance in question provides as follows:

"Before turning the corner of any street or public way the driver or person in possession, charge or control of any vehicle, being driven or propelled around such corner, shall give a signal by raising his hand or whip, so that such signal can be plainly seen from behind such vehicle and from the side toward which the turn is to be made, and such signal shall be given in a manner which shall plainly indicate the direction in which such vehicle is about to turn. In turning corners to the right, vehicle shall turn to the right of the center of the street into which they turn. In turning corners to the left vehicles shall pass to the right of the center of the intersection of the two streets."

It is insisted that this ordinance is superseded by the Motor Vehicle Act contained in chapter 121, Hurd's

Revised Statutes of 1927, Cahill's St. ch. 95a ¶ 1 *et seq.*
It is argued that there is nothing in said statute re-
quiring the driver of an automobile turning a corner
to raise "his hand or whip, so that such signal can be
plainly seen from behind such vehicle and from the
side toward which the turn is to be made."

The statute contains the following provision:

"Nor shall such owner . . . be required to comply
with other provisions or conditions as to the use of
said motor vehicles or motor bicycles except as in this
Act provided. . . . *Provided,* that nothing in this
Act contained shall be construed as affecting the power
of municipal corporations to make and enforce ordi-
nances, rules and regulations affecting motor trucks
and motor driven commercial vehicles used within
their limits for public hire, or from making and enforc-
ing reasonable traffic and other regulations except as
to rates of speed *not inconsistent with the provisions
hereof.*" Cahill's St. ch. 95a, ¶ 27.

Prior to the passage of the Motor Vehicle Act, mu-
nicipalities of the State possessed power to legislate
upon the subject covered by this act. The original act
as amended in 1911, with the foregoing proviso con-
tained in said amended act, provided that municipali-
ties were not prohibited from making and enforcing
reasonable traffic and other regulations except as to
rates of speed not inconsistent with the amended act.

The Supreme Court in the case of *City of Chicago v.
Shaw Livery Co.,* 258 Ill. 409, in its opinion said:

"Section 12 of the act of 1911 deals with the same
subject matter as section 13 of the act of 1907 and is
practically the same in its scope and intent, except that
by the act of 1911 the following language is added to
the last proviso of said section 12: 'or from making
and enforcing reasonable traffic and other regulations
except as to rates of speed not inconsistent with the
provisions hereof.' That provision was nowhere con-

tained in the act of 1907, and the intent and purpose of the legislature in incorporating it into the act of 1911 was undoubtedly to meet the statement in the *Ayres case* that it was clearly the purpose of the legislature to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles. By the addition of the language last quoted to the act of 1911 the legislature has invested municipalities with the power and authority to make any regulation of the use of motor vehicles not inconsistent with the provisions of the act, except as to rates of speed.''

The ordinance in question did not deal with the speed of motor driven vehicles, but might well be classified as a traffic regulation and we cannot say that it is in conflict with the statute. A similar ordinance was before the Supreme Court of this State in the case of *Johnson v. Pendergast*, 308 Ill. 255, and while the question here involved was not directly raised in that case, the ordinance and the statute were considered as if both were to be given their full force and effect. Inferentially it might be said that the Supreme Court did not consider that the ordinance in question was abrogated by the statute.

We are of the opinion that the ordinance involved in this case is not in conflict with the Motor Vehicle Act, but a valid traffic regulation and not inconsistent with that statutory enactment.

It is also urged for reversal that the court erred in giving certain instructions on behalf of the defendant. From the record it appears that at the close of the evidence, instructions in writing were submitted by both parties and the presiding judge thereupon called counsel into his chambers to discuss them. The court in chambers raised certain objections to the giving of some of defendant's instructions. Thereupon, counsel for the plaintiff said: ''Give him everything he wants,

Judge, I don't care what you give.'' Thereupon the court gave the instructions as submitted. One of the instructions in question was to the effect that plaintiff's failure to observe the provisions of the ordinance in question constituted *prima facie* evidence of negligence. The other was in regard to the Motor Vehicle Act. Neither instruction is set out in the brief, but we are referred to the record. Under the practice here, the giving or refusing of instructions as relied upon for reversal should be set out in the brief and this court should not be required to search the record in order to find them.

We are of the opinion, however, that it is sufficient to say that the action of counsel for plaintiff in telling the court to give the instructions and that he did not care what the court gave, was sufficient to preclude him from thereafter objecting to the giving of such instructions. It may be that counsel for the plaintiff was so certain of obtaining a verdict that he did not care to have any error in the record by reason of the court refusing instructions tendered on behalf of the defendant. This does not, however, entitle counsel to predicate error on the giving of such when he, himself, has led the court into the belief that he waived error, if any, contained in them, and would not take advantage of the giving of the same. Under the circumstances, we do not believe plaintiff, by reason of the action of his counsel, should be entitled to be heard on this question.

For the reasons stated in this opinion the judgment of the superior court is affirmed.

*Judgment affirmed.*

HOLDOM, P. J., and RYNER, J., concur.