Florence S. Tuttle, Appellant, v. Checker Taxi Company, Appellees.

Gen. No. 37,911.

Opinion filed April 1, 1935.

ROYAL W. IRWIN, of Chicago, for appellant.

ERWIN W. ROEMER and JOHN W. COSTELLO, both of Chicago, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendants to recover damages for personal injuries claimed to have been sustained by her as a result of being struck and injured by the negligent operation of a taxicab owned and operated by defendants. There was a jury trial and a verdict in favor of defendants. Plaintiff's motion for a new trial was allowed and leave was granted by this court allowing defendants an appeal from the order awarding a new trial. Upon consideration by this court, the order appealed from was affirmed. *Tuttle v. Checker Taxi Co.*, 274 Ill. App. 525. There was another trial of the case and a verdict and judgment in defendants' favor and plaintiff appeals.

The record discloses that the accident occurred on State street about 100 feet south of Madison street, as plaintiff was attempting to board a northbound street car. Plaintiff left the east curb, passing between two automobiles in the first, or east, lane of traffic, and as she reached the second lane of traffic

was struck by one of defendants' northbound taxicabs driven in the second lane by its chauffeur, Fluckiger, the other defendant.

The evidence tends to show that plaintiff was about opposite the rear step of the street car. The space between the east curb and the east rail of the northbound track was about 22 feet. A loading zone for street cars had been established at this place; it was indicated by a yellow line painted on the pavement which ran parallel with the street car tracks, and six feet east of the east rail. This line commenced at a point about 20 feet south of the "stop and go" light at the street intersection and continued south in a straight line parallel to the street car tracks for 95 feet, when it turned diagonally toward the street car tracks for 20 feet. The evidence is to the effect that at the time the Checker cab struck plaintiff it was less than 10 feet from the rear step of the street car, which the evidence tends to show was standing for the purpose of receiving passengers at the time. There were a great many people standing in the loading zone intending to board the car.

Plaintiff testified that as she stepped between the automobiles in the east lane and into the second lane of the northbound traffic, the taxicab, which was stopped, "lurched forward" and struck her, throwing her to the ground and severely injuring her.

On the other side, the taxi driver testified that the cab had not stopped but was moving when plaintiff suddenly stepped from between the automobiles in the east lane of traffic in front of the cab and was struck by the right front fender.

Plaintiff contends that the court erred in admitting two ordinances of the City of Chicago over objection of her counsel; that these ordinances are invalid because they are in conflict with the statute. The first ordinance complained of is par. (b), sec. 77, Art. VIII

of the Uniform Traffic Code of Chicago. It provides that:

"It shall be unlawful for the operator of any vehicle to fail to stop said vehicle not less than ten feet to the rear of the nearest open doorway of any street car that has stopped for the purpose of receiving or discharging passengers, or for said operator to again proceed until all persons have boarded said street car or have reached a place of safety. This provision shall not apply to passing upon the left of any street car on a one-way street or upon such streets where the tracks are so located as to prevent compliance with the rule.

"Provided, however, that where a safety zone has been established or at any intersection where traffic is directed by a police officer or by an official traffic signal, an operator need not stop but may proceed at a rate of speed consistent with the safety of pedestrians."

Counsel say that this ordinance conflicts with sec. 40 of the Motor Vehicle Act of this State. (Ch. 95a, ¶ 41, Cahill's 1933 Stats.) The pertinent portion of that section provides: "In approaching or passing a street railway car, which has been stopped for the purpose of receiving or discharging passengers, the operator of every motor vehicle or motor bicycle shall not drive such vehicle or bicycle within ten feet of the running board or lowest step of such car, except by the express direction of a traffic officer."

Sec. 26 of the same chapter of the Motor Vehicle Act provides, *inter alia,* "Except as in this section provided, no city, town or village or other municipality shall have power to make any ordinance, by-laws or resolutions limiting or restricting the speed of motor vehicles or motor bicycles, and no ordinance, by-law or resolution heretofore or hereafter made by any city, village or town or other municipal corporation within this State, by whatever name known or desig-

nated, in respect to or limiting the speed of motor vehicles or motor bicycles shall have any force, effect or validity, and they are hereby declared to be of no validity or effect: *Provided,* that nothing in this Act contained shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor driven commercial vehicles used within their limits for public hire, or from making and enforcing reasonable traffic and other regulations except as to rates of speed not inconsistent with the provisions hereof.''

Obviously if an ordinance is contrary to a statute, the ordinance must give way. The ordinance, like the statute, makes it unlawful for the operator of any motor vehicle to fail to stop the vehicle not less than 10 feet from a street car that has stopped for the purpose of receiving or discharging passengers. But the statute (sec. 26) also provides that nothing contained in the act shall prevent a municipality ''from making and enforcing reasonable traffic and other regulations except as to rates of speed,'' which is not inconsistent with the act. The ordinance provides that it is unnecessary for the operator of a motor vehicle to stop 10 feet from a street car which was stopped to receive or discharge passengers ''where a safety zone has been established'' or ''where traffic is directed by a police officer or by an official traffic signal,'' in which case the motor vehicle ''may proceed at a rate of speed consistent with the safety of pedestrians.''

We think this provision of the ordinance is but a traffic regulation authorized by the statute above quoted. *City of Chicago v. Francis,* 262 Ill. 331; *City of Chicago v. Keogh,* 291 Ill. 188; *Pettit v. Weil-McLain Co.,* 252 Ill. App. 423; *Village of Winnetka v. Sinnett,* 272 Ill. App. 143.

In the *Francis* case, 262 Ill. 331, an ordinance of the City of Chicago (which required the owner of a motor vehicle to display a number upon such vehicle corresponding with the city license) was held to be in conflict with the statute and void. The law then contained the same provision as that in sec. 26 above quoted, and in discussing this provision the court said (p. 337): ''The exception, from the law, of motor trucks and motor-driven commercial vehicles, which would necessarily be used locally, emphasizes the intent of the law in regard to motor vehicles like the one used by plaintiff in error in this case. It is undoubtedly necessary for municipalities to establish and enforce traffic regulations, and the reasonableness of municipal ordinances enforcing such regulations would depend upon the circumstances and conditions in such municipalities. Under the law a municipality may make and enforce reasonable traffic and *other* regulations, except as to rate of speed, *not inconsistent with* the provisions of the State law regulating the use of motor vehicles when conditions warrant them.''

In the *Keogh* case (291 Ill. 188) it was held that an ordinance forbidding the driver of a motor vehicle, on overtaking a street car, to pass on the left side of the car, was purely a traffic ordinance and not in violation of the Motor Vehicle Act.

In the instant case we hold that the ordinance is but a necessary traffic regulation and not in conflict with the statute, but is expressly authorized by section 26 of the act. If there seems to be a slight inconsistency between that section and section 40 of the act (the one authorizing a municipality to make reasonable traffic and other regulations except as to rates of speed; and the other providing that one shall not drive a motor vehicle within ten feet of the lowest step of a street car in passing it), we must remember what we said when this case was here on an appeal from a motion awarding a new trial (274 Ill. App. 525). We there

quoted·from Mr. Justice Holmes (282 U. S. 499) where he said that "The interpretation of constitutional principles must not be too literal. We must remember that the machine of government would not work if it were not allowed a little play in its joints." But we think the inconsistency is more apparent than real. The ordinance in question is a traffic regulation authorized by the statute. We judicially notice the fact that in the crowded conditions existing in the Loop of Chicago and in other places, it would be impossible to carry on without some such traffic regulation as provided for in the ordinance.

The other ordinance admitted in evidence, of which plaintiff complains, provides that "Any pedestrian crossing a roadway at any point other than within a crosswalk shall yield the right of way to vehicles upon the roadway.

"The provisions of this section shall not relieve an operator of a vehicle or a pedestrian from the duty to exercise due care."

Counsel for the defendants say this ordinance was not admitted in evidence, but if we assume that it was, we think there was no error. Counsel for plaintiff says this ordinance is invalid because it conflicts with section 40 of the Motor Vehicle Act, ch. 95a, Cahill's 1933 Statutes, which provides that "Upon approaching a person walking upon or along a public highway, or a horse or horses, or other draft or domestic animal or animals being ridden, led or driven thereon, the operator of a motor vehicle or motor bicycle shall give reasonable warning of his approach and use every reasonable precaution to avoid injuring such person, or frightening or injuring such horse, horses, or other draft or domestic animal or animals, and, if necessary, stop his said motor vehicle or motor bicycle until he can safely proceed." In support of this contention counsel says: "A pedestrian upon a public highway has an equal right therein with a motorist. The Legis-

lature alone has the power to take from one his legal right.'' We think there is no inconsistency between the ordinance and the statute. The situation contemplated in the statute is not the situation involved in the case at bar where plaintiff was attempting to cross the street 100 feet from the street intersection. It is obvious that one driving a motor vehicle in a city or village is expected to exercise a higher degree of care at intersecting streets than at 100 feet from the intersection where a driver would not be expecting a person to cross. We think defendants were entitled to the benefit of this ordinance by calling it to the attention of the jury.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY and MATCHETT, JJ., concur.